**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DERRICK A. BURKLEY,

      Plaintiff-Appellant,

v.

CORRECTIONAL HEALTHCARE
MANAGEMENT OF OKLAHOMA,
INC.; CHARLES F. HARVEY, DO;
CORRECTIONAL HEALTHCARE
MANAGEMENT INC.,

      Defendants-Appellees.

and

OKLAHOMA COUNTY
COMMISSIONERS, on behalf of the
Oklahoma County Jail; JOHN
WHETSEL, in his individual and
official capacity as Sheriff of
Oklahoma County; RUSSELL DEAR,
in his individual and official capacity
as Administrator of Oklahoma County
Jail,

      Defendants.

No. 04-6079
(D.C. No. 02-CV-1762-L)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **SEYMOUR**, Circuit Judge, **PORFILIO,** Senior Circuit Judge and **HARTZ,** Circuit Judge.

Derrick Burkley appeals from an order of the district court granting defendants' motions for summary judgment in his 42 U.S.C. § 1983 action, on the ground that the statute of limitations barred his federal claims. We affirm.

Mr. Burkley, who is paraplegic and confined to a wheelchair, was detained prior to trial in the Oklahoma County Detention Center from August 2000 to March 2001. During this time, he developed a serious decubitis ulcer, commonly termed a "bedsore," on his left buttock. He was subsequently physically restrained, allegedly to further treatment for his bedsore, in restraints of varying severity. He brings claims under the Fifth and Fourteenth Amendments, alleging deliberate indifference to his serious medical needs and the unlawful use of restraints.[1] His suit is against the detention center's medical providers, Correctional Healthcare Management and Correctional Healthcare Management of Oklahoma, Inc., and its employee, Dr. Charles Harvey, the treating physician. The district court held that all of Mr. Burkley's federal claims were barred because they were premised on acts falling outside of the applicable statute of

---

[1]He also alleged claims under the Equal Protection Clause, Americans with Disabilities Act, and a state law claim of medical negligence, all of which he has abandoned on appeal. *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

-2-

limitations, such acts being "sufficient to put plaintiff on notice that his rights had been violated." Aplt. App. at 1101. The court declined to exercise supplemental jurisdiction over Mr. Burkley's state law claim of medical negligence.

We review a grant of summary judgment *de novo*. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326. In addition, we review statute of limitations issues *de novo*. *Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 916 (10th Cir. 2005). Section 1983 claims are "best characterized as personal injury actions" and as a result, "the forum state's personal injury statute of limitations should be applied." *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). The applicable statute of limitations in this case is two years, as set forth in OKLA. STAT. tit. 12, § 95(3). A determination of when a claim accrues, however, is a matter of federal law. *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987).

Mr. Burkley filed this lawsuit on December 12, 2002. Under the two-year

statute of limitations, his suit only covers injuries from December 12, 2000, onwards. Although he alleges some facts that follow December 12, most of Mr. Burkley's allegations fall within an approximately three-month window preceding December 12. He contends we should consider these pre-December 12 injuries on the theory that they were continuing in nature and that his claims did not properly accrue until the last date of his injuries. He also contends he was denied adequate medical care until February 26, 2001, and he was unlawfully restrained until December 15, 2000. He thus argues that his claims accrued, and the statutes of limitations began to run, on February 26, 2001 and December 15, 2000, respectively.

The district court held that the date of accrual fell before December 12, relying on the proposition that "[a] civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993). In certain circumstances, however, a plaintiff can experience continuing violations or wrongs such that a claim accrues for limitations purposes at the *culmination* of the continuous injury. *See Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996) (applying New Mexico law and holding claim accrues, and limitations period runs, from date of last injury or when "the wrong is over and done with"); *see also Heard v. Sheahan*, 253 F.3d 316, 318-19 (7th Cir. 2001) (applying

-4-

continuing wrong doctrine in § 1983 deliberate indifference case). The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period. *See Heard*, 253 F.3d at 318; *Tiberi*, 89 F.3d at 1430-31. There is some dispute over whether the continuing violation doctrine applies with respect to § 1983 suits.[2] Assuming without deciding that the doctrine applies, we are not persuaded Mr. Burkley has identified sufficiently serious injuries within the statute of limitations period such that he can employ the continuing violation doctrine to sustain his action.

We first address Mr. Burkley's claim of deliberate indifference to his medical needs to determine whether he incurred sufficient injuries within the statute of limitations period.[3] Mr. Burkley's general claims are that he was

---

[2]It appears that we have not yet applied this doctrine to suits under 42 U.S.C. § 1983. *See, e.g, Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (noting that plaintiff cited no cases extending doctrine to § 1983 suits, but observing that conspiracy claims are analogous and have been held viable under § 1983); *cf. Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184-86 (10th Cir. 2003) (acknowledging doctrine but rejecting its use for discrete acts of discrimination under the Americans with Disabilities Act, following *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (Title VII case)); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513-14 (10th Cir. 1997) (questioning applicability of doctrine to § 1981 suits). However, other circuits have recognized the viability of this approach. *See Heard v. Sheahan*, 254 F.3d 316, 320 (7th Cir. 2001) ("Numerous cases assume that a federal doctrine of continuing wrongs is indeed applicable to suits under 42 U.S.C. § 1983.") (collecting cases).

[3]Mr. Burkley's conditions-of-confinement claims as a pretrial detainee are analyzed as due process claims while those of a convicted prisoner are analyzed

denied the use of his specially-padded wheelchair to help prevent bedsores, he was denied medical care, and the care he did receive was inadequate. Mr. Burkley's ulcer was first diagnosed by medical staff at the jail on September 20, 2000. The wound quickly progressed to Stage IV, which is the most serious level of ulcer. Mr. Burkley was sent to the hospital in mid-October where he underwent two surgical procedures, and he was returned to the detention center in early November. During this time he was placed in restraints of decreasing severity to prevent him from lying on his wound. Mr. Burkley testified that he got his own padded wheelchair back on or around December 13, aplt. app. at 223, and the district court found that Mr. Burkley received his padded wheelchair by December 15 at the latest. *Id.* at 1097. Although Mr. Burkley points to several other acts that he argues constitute deliberate indifference post-December 12, he testified definitively that he had no further complaints about his medical care after he received his wheelchair. *Id.* at 223 ("everything was cool after that"). In addition, Dr. Harvey examined Mr. Burkley on December 12 and noted that his ulcer had "healed nicely." *Id.* at 112. The doctor agreed at that time that Mr. Burkley could be transferred to his regular cell and be taken out of restraints.

---

as Eighth Amendment claims. However, the same analysis applies to both types of claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.") (citation omitted).

Based on Mr. Burkley's allegations, the only act that could support his claim of deliberate indifference is the denial of his padded wheelchair for at most three days. Prisoners with disabilities who are susceptible to decubitis ulcers may be able to demonstrate deliberate indifference if the prison allows their sores to develop or to worsen. *See, e.g., Green v. McKaskle*, 788 F.2d 1116, 1127-28 (5th Cir. 1986) ("There is no question that allowing bedridden prisoners to develop bedsores may demonstrate deliberate indifference to the needs of those prisoners.") (citing *Estelle v. Ruiz*, 503 F. Supp. 1265, 1346 (S.D. Tex. 1980) ("Allowing bedridden or sedentary inmates with mobility impairments to develop bedsores–which could be minimized or prevented by proper hygiene and nursing–constitutes deliberate indifference to their serious medical needs.")). Mr. Burkley has not established that the three-day deprivation of his wheelchair was sufficiently serious to constitute deliberate indifference nor that defendants were subjectively aware of any substantial risk to him by not having a padded wheelchair for that period of time. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (deliberate indifference to serious medical needs under the Eighth Amendment requires "sufficiently serious" deprivation and "sufficiently culpable state of mind" by prison official). In fact, the record reveals that by December 12 officials believed Mr. Burkley's health was satisfactory and improving.

Mr. Burkley also contends he was subjected to cruel and unusual punishment through the unlawful use of restraints. He was restrained for over one month after his return from the hospital, and was released from the restraints by December 15. Looking to the window of time between December 12 and 15, we conclude that Mr. Burkley's claim cannot succeed. During the limitations time period, the record reflects that Mr. Burkley was restrained by only one arm. *See* Aplt. App. at 1097, 1102 n.9; *see also id.* at 359, 364, 400, 429. The district court noted it had uncovered no case where such a limited restraint was determined to be a constitutional violation, and Mr. Burkley brought forward no evidence that the restraints were ordered "for the very purpose of causing him harm, rather than in a good faith effort to help him heal." *Id.* at 1102. We agree that not only does this minimal level of restraint for three days fail to meet the "sufficiently serious" prong of the deliberate indifference test, but Mr. Burkley has not demonstrated that defendants acted with a sufficiently culpable state of mind during these three days, or pointed to evidence from which we can infer that "the risk of harm is obvious." *See Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (applying deliberate indifference standard to use of restraints by prison officials); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1046 (E.D. Va. 1995) ("federal courts in considering Eighth Amendment claims [attacking the medical use of restraints] are limited to considering whether the medical treatment afforded state

prisoners amounts to punishment"). As a result, we hold that Mr. Burkley has not proffered sufficient evidence to extend this claim into the limitations period.

Because Mr. Burkley has not demonstrated he suffered constitutional injuries within the statute of limitations time period, he is thus not able to make use of the continuing violation doctrine. As a result, we **AFFIRM.**

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Circuit Judge